**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

(1) FIDELITY AND DEPOSIT COMPANY )
OF MARYLAND, a Maryland corporation, )
                                        )
          Plaintiff, )
                                          )
v. )    Case No. CIV-12-301-HE
                                          )
(1) WITTWER CONSTRUCTION CO., INC., )
a Nebraska Corporation; (2) WINDERMERE )
INVESTMENTS, LLC, an Oklahoma limited )
liability company; (3) DMR AVIATION, LLC, )
an Oklahoma limited liability company; )
(4) GRIFFIN LEASING, LLC, an Oklahoma )
limited liability company; (5) D.R. WITTWER, )
L.P.; (6) DANIEL R. WITTWER, individually; )
(7) TRACY LYNN WITTWER, individually; )
and (8) THE DAN AND TRACY WITTWER )
FAMILY TRUST, )
                                          )
          Defendants. )

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND'S VERIFIED
COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING
ORDER, PRELIMINARY INJUNCTION AND OTHER EQUITABLE RELIEF**

Plaintiff, Fidelity and Deposit Company of Maryland ("F&D"), for its verified complaint and

application for temporary restraining order, preliminary injunction and other equitable relief against

defendants, Wittwer Construction Co., Inc.; Windermere Investments, LLC; DMR Aviation, LLC;

Griffin Leasing, LLC; D.R. Wittwer, L.P.; Daniel R. Wittwer, Tracy Lynn Wittwer and The Dan and

Tracy Wittwer Family Trust (referred to collectively hereafter as "Indemnitors"), alleges and states

as follows:

## I.  INTRODUCTION

This dispute arises from Wittwer Construction Co., Inc.'s ("Wittwer") failure to pay its subcontractors and suppliers on numerous construction projects and its failure to satisfy its contractual obligations to complete these same construction projects.  Wittwer's default has resulted in over $3,000,000.00 in claims on the payment and performance bonds issued on behalf of Wittwer by F&D.  Wittwer's defaults and failure to pay subcontractors and suppliers was not only a breach of its obligations under the underlying construction contracts and bonds, but also a breach of the Indemnitors' obligations under the Agreement of Indemnity executed in favor of F&D.  Despite demand, Indemnitors have fully failed to indemnify and hold F&D harmless from loss resulting from their breaches.  Failing to use construction proceeds to pay subcontractors and suppliers also constitutes a breach by the Indemnitors' fiduciary duties to F&D under the Agreement of Indemnity and other law.  Thus, F&D has brought this action against the Indemnitors for breach of the Agreement of Indemnity, breach of fiduciary duty and other legal and equitable relief.  F&D also seeks a temporary restraining order and preliminary injunction barring the Indemnitors from dissipating and/or secreting assets that may be used to satisfy their obligations to F&D, barring the Indemnitors from further secreting key information and documentation from F&D, and ordering specific enforcement of certain provisions of the Agreement of Indemnity and, otherwise, providing equitable relief to F&D.

## II.  PARTIES

1.      F&D is a Maryland corporation with its principal place of business in Schaumberg, Illinois.

2

2.      Defendant, Wittwer Construction Co., Inc., is a Nebraska corporation with its principal place of business in Stillwater, Oklahoma.

3.      Winderemere Investments, LLC; DMR Aviation, LLC; and Griffin Leasing, LLC are Oklahoma limited liability companies with their principal places of business in Stillwater, Oklahoma.  Upon information and belief, all members of these limited liability companies are residents of Oklahoma.

4.      D.R. Wittwer, L.P. is a limited partnership located in Stillwater, Oklahoma.

5.      Daniel R. Wittwer and Tracy Lynn Wittwer are individuals residing in Stillwater, Oklahoma.

6.      The Dan and Tracy Wittwer Family Trust is an Oklahoma trust.

### III.  JURISDICTION

7.      This is a civil action between citizens in different states and the matter in controversy in this action exceeds the sum of $75,000.00 exclusive of interest and costs.  Thus, pursuant to 28 U.S.C. § 1332, this Court has jurisdiction.

### IV.  VENUE

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) as a substantial part of the events giving rise to the claim occurred in this judicial district and the Indemnitors reside in this judicial district.

### V.  FACTS

9.      On or about June 15, 2009, Indemnitors, in order to induce F&D to issue contract surety bonds on behalf of Wittwer Construction Co., Inc., executed an Agreement of Indemnity in favor of F&D. (*See*, Exhibit "1" attached hereto).

3

10.     In reliance upon the Agreement of Indemnity executed by the Indemnitors, F&D, as surety, and Wittwer, as principal, executed numerous contract surety bonds to cover numerous construction projects being performed by Wittwer.

11.     Beginning in November of 2011, Wittwer notified F&D that it would be unable to perform or complete the performance of the contracts bonded by F&D and that it was financially unable to pay subcontractors and suppliers for labor and/or materials supplied to these bonded contracts and was therefore in default.  Wittwer acknowledged its default in writing on December 14, 2011.  (*See*, Exhibit "2" attached).

12.     As a result of Wittwer's default, F&D has been compelled to pay Wittwer's subcontractors and suppliers on numerous bonded contracts and has arranged and paid for the completion of several bonded contracts.

13.     To date, F&D has paid approximately $2,949,101.18 to satisfy payment bond claims and an additional $543,000.00 to satisfy performance bond claims.

14.     The Agreement of Indemnity provides in relevant part:

### INDEMNITY

SECOND:    The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interests, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bond, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.  Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any

4

payment therefor. Such payment shall be equal to the amount of the reserve set by the Surety. In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be *prima facie* evidence of the fact and amount of the liability to the Surety.

## ASSIGNMENT

THIRD: The Contractor, the Indemnitors hereby consenting, will assign, transfer and set over, and does hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Contractor to the Surety, whether heretofore or hereafter, incurred, the assignment in the case of each contract to become effective as of the date of the bond covering such contract, but only in the event of (1) any abandonment, forfeiture or breach of any contracts referred to in the Bonds or of any breach of any said Bonds; or (2) of any breach of the provisions of any of the paragraphs of this Agreement; or (3) of a default in discharging such other indebtedness or liabilities when due; or (4) of any assignment by the contractor for the benefit of creditors, or of the appointment, or of any application for the appointment, of a receiver or trustee for the Contractor whether insolvent or not; or (5) of any proceeding which deprives the Contractor of the use of any of the machinery, equipment, plant, tools or material referred to in section (b) of this paragraph or (6) of the Contractor's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisoned if the Contractor be an individual: (a) All the rights of the Contractor in, and growing in any manner out of the Bonds; (b) All the rights, title and interest of the Contractor in and too all machinery, equipment, plant, tools, drawings, plans, designs, architectural works, documents, specifications, models and materials which are now, or may hereafter be, about or upon the site elsewhere, including materials purchased for, held, intended for or chargeable to any and all contracts referred to in the Bonds, materials which may be in the process of

5

construction, in storage elsewhere, or in transportation to any and all of said sites; (c) All the rights, title and interest of the Contractor in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) All actions, causes of actions, claims and demands whatsoever which the Contractor may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer, or materialman; (e) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Contractor has an interest; (f) A license to use, without cost to the Surety, any interest the Contractor may have in or and to all copyrights, inventions, applications, patents, or any other form of intellectual property, and any improvements thereon, which now, or may hereafter, relate to any and all of the contracts referred to in the Bonds or elsewhere, or which are not, or may hereafter be, embodied in any drawings, plans, designs, architectural works, documents, specifications, models, machinery, equipment, plants, processes or other materials referred to in section (b) of this paragraph.

## BOOKS AND RECORDS

NINTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Contractor, and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts.

(*See*, Exhibit "1").

## VI. MISAPPROPRIATION OF CONTRACT PROCEEDS BY WITTWER

15. Upon information and belief, pursuant to the terms of the contracts bonded by F&D, Wittwer was required to certify that its subcontractors and suppliers who had supplied labor and materials to the projects had been and/or would be paid for their work on the project. In addition, pursuant to the terms of the Agreement of Indemnity, as well as the provisions of many of the contracts executed by Wittwer, all contract funds received by Wittwer were designated to be held as trust funds for the payment of labor, materials and services furnished in the prosecution of the work. Although Wittwer was required to use all contract funds to pay subcontractors and suppliers, F&D has been compelled to pay approximately $2,949,101.18 in payment bond claims as a result of Wittwer's failure to properly use the contract trust funds to pay subcontractors and suppliers. Specific examples of Wittwer's misappropriation of contract trust funds are as follows:

a. Wittwer contracted with ODOT on a contract known as Beckham County STPY-105A(080) ("ODOT Beckham County job"). The contract totaled $6,402,208.00. F&D issued payment and performance bonds on behalf of Wittwer on this project. Wittwer received all but $71,603.84 of the contract funds from ODOT for work performed on this project, yet, F&D has been compelled to pay in excess of $1,200,000.00 in payment bond claims for labor and materials supplied to this project.

b. F&D issued payment and performance bonds for Wittwer on a project known as Tradan Heights, a commercial development in Stillwater, Oklahoma. One of the obligees on the performance bond, BancFirst, has asserted a claim against the bond because of Wittwer's failure to perform the site improvements required under its contract. BancFirst has allegedly paid Wittwer

7

$934,000.00 of the $1,100,000.00 in contract funds yet, the work on the project is only 50% complete.

Thus, the contract funds received by Wittwer on the above referenced projects were clearly not used to pay for labor, materials and services supplied to these projects. Wittwer has refused to produce its books and records relating to these projects and has otherwise failed to account for the contract funds received.

## VII.  THE INDEMNITORS' OBLIGATIONS TO F&D

16.    As a result of Indemnitors' actions, which led to the claims on the payment and performance bonds issued by F&D, F&D has incurred losses and expenses to date in excess of $3,500,000.00.  F&D has also received additional claims which are under investigation in the approximate amount of $92,000.00.  F&D has set reserves in the amount of $3,800,000.00 to cover losses it may incur as a result of issuing bonds on behalf of Wittwer and the Indemnitors.

17.    Pursuant to its rights under the Agreement of Indemnity and other law, F&D has demanded that the Indemnitors indemnify F&D for its losses by depositing funds as collateral with F&D in the amount of $3,800,000.00 (the amount of F&D's reserve). (*See*, Exhibit "3" attached hereto).  The Indemnitors have wholly failed and refused to satisfy this demand and are in breach of the Agreement of Indemnity.

18.    Under the Agreement of Indemnity, F&D has a secured interest in funds in the possession of, or which may come into the possession of, the Indemnitors and a right to collateral, indemnification, access to books and records, and other relief.  Moreover, under the trust provision of the Agreement of Indemnity, quoted above, F&D is the equitable owner and beneficiary of funds in the possession of the Indemnitors, or funds that may come into their possession, or that are trust

8

funds as identified in the Agreement of Indemnity. F&D also has other rights in assets of the Indemnitors, as explained below. Finally, F&D is a potential judgment creditor of the Indemnitors, and, thus, has contingent interest in their assets to the extent not otherwise secured.

## VIII.  WRONGFUL TRANSFER OF ASSETS BY WITTWER

19.     In November, 2011, Wittwer notified F&D that it was financially unable to satisfy its contractual obligations for the projects bonded by F&D. On December 14, 2011, Wittwer acknowledged default under the construction contracts and bonds in writing. (*See*, Exhibit "2" attached). In accordance with the Agreement of Indemnity, upon Wittwer's breach and default, all of Wittwer's title and interest in any machinery, equipment, plants, etc. were to be assigned and transferred to F&D and, the Indemnitors were required to pay F&D sufficient funds to satisfy all liability asserted against F&D as a result of issuing the bonds. On or about December 28, 2011, after acknowledging default under the bonds, Wittwer transferred to Richard K. Metheny and Connie B. Metheny, trustees of the Richard K. Metheny Revocable Trust and the Connie B. Metheny Revocable Trust, certain property located in Payne County which, upon information and belief, was a concrete plant owned by Wittwer. (*See*, General Warranty Deed attached as Exhibit "4"). This transfer was in direct violation of the Agreement of Indemnity and a misappropriation of assets to which F&D has an interest or equitable ownership.

## IX.  RISK OF INDEMNITORS' MISAPPROPRIATION OF FUNDS AND ASSETS

20.     When Indemnitors possess or come into possession of real property, funds or other assets in which F&D has an interest or equitable ownership under the Agreement of Indemnity, such real property, funds or other assets could easily be transferred, secreted, or otherwise dissipated by the Indemnitors beyond the reach of F&D in violation of F&D's rights in such real property, funds

or assets and, in violation of Indemnitors' fiduciary obligations as trustees of such real property, funds or assets under the Agreement of Indemnity and other law. Indemnitors have every motivation to do so to attempt to place such funds beyond the reach of F&D and render the Indemnitors judgment proof as to F&D.

21. Such transfer, secreting, or other wrongful dissipation by the Indemnitors is, in fact, likely because as much as $1,200,000.00 in contract proceeds from the ODOT Beckham County job, as well as contract funds from the Tradan Heights project, were previously misappropriated by certain of the Indemnitors in violation of F&D's rights in such funds and in breach of Indemnitors' fiduciary obligations as trustees of such funds under the Agreement of Indemnity and common law. Upon information and belief, Indemnitors also executed lien waivers or other documents upon receipt of contract funds which indicated that they had and would use the contract funds to pay subcontractors and suppliers yet failed to do so. Wittwer also wrongfully transferred or sold a concrete plant to which F&D had an interest or equitable ownership. These past misappropriations by the Indemnitors make future misappropriations more likely. In addition, the Indemnitors have otherwise failed to comply with their other obligations to F&D under the Agreement of Indemnity, including their obligations under the "Books and Records" provision. The Indemnitors have been asked to produce books, records and financial information in accordance with their obligations under the Agreement of Indemnity (see, Exhibit "5"), but Indemnitors have wholly failed to do so. By failing to disclose or secreting financial and other information regarding the Indemnitors from F&D, Indemnitors indicate their motivation and intent to misappropriate assets to which F&D may have an interest or equitable ownership.

10

22.     The misappropriation by Indemnitors of construction funds and other assets to which F&D has an interest or equitable ownership represents an imminent harm to F&D that would be irreparable and as to which it has no adequate legal remedy.

## X.  CONCLUSION

23.     Based on the foregoing facts, and because of Indemnitors failure to abide by their obligations under the Agreement of Indemnity and other law, including their fiduciary obligations, F&D has been compelled to bring this lawsuit against the Indemnitors seeking the following legal and equitable relief.

## COUNT 1:  BREACH OF AGREEMENT OF INDEMNITY

24.     F&D incorporates and realleges the factual allegations in Paragraphs 1 to 23 above as if fully set forth herein.

25.     F&D has demanded that the Indemnitors honor their obligations under the Agreement of Indemnity to indemnify and hold F&D harmless from any and loss, liability, damages and expenses and to produce books and records relating to the financial condition of the Indemnitors as required by the Agreement of Indemnity.  Despite such demands, the Indemnitors have failed and refused to honor their obligations under the Agreement of Indemnity.

26.     As a result of the Indemnitors breach of the Agreement of Indemnity, F&D has sustained losses and expenses, including, but not limited to, payments on the payment and performance bonds, attorneys' fees and expenses, and consulting fees, totaling in excess of $3,500,000.00, and will continue to sustain losses and expenses through the time of trial.

27.     Pursuant to the clear terms of the Agreement of Indemnity, F&D is entitled to judgment for indemnity and exoneration against the Indemnitors for F&D's losses and expenses incurred as a result of issuing bonds on behalf of Wittwer and pursuing its rights of indemnification.

28.     Furthermore, under the Agreement of Indemnity, F&D is entitled to be placed in funds in an amount F&D deems necessary to protect it from further losses and expenses, and is granted other remedies, legal and equitable, including, but not limited to, those sought herein.

## COUNT 2:  BREACH OF FIDUCIARY DUTIES AS TRUSTEE

29.     F&D incorporates and realleges the factual allegations in Paragraphs 1 to 28 above as if fully set forth herein.

30.     The trust fund provision of the Agreement of Indemnity imposes fiduciary duties on the Indemnitors to hold in trust all funds so identified therein.  The Indemnitors agreed that any such funds would be held in trust for the benefit of F&D for the payment of all obligations arising as a result of the projects, including any liability or loss it might sustain under the bonds.

31.     Upon information and belief, the Indemnitors, with knowledge of the trust character of the funds, did not hold in trust all funds identified as trust funds in the Agreement of Indemnity, but, instead, misappropriated such trust funds by defalcation while in their fiduciary capacities as trustees of the trust funds.

32.     As a result of the Indemnitors' breach of their fiduciary duties to F&D, F&D has sustained losses and expenses, including, but not limited to, payments on the payment and performance bonds, attorneys' fees, consulting fees, totaling in excess of $3,500,000.00, and will continue to sustain losses and expenses through the time of trial.

12

### COUNT 3:  COMMON LAW INDEMNIFICATION

33.    F&D incorporates and realleges the factual allegations in Paragraphs 1 to 32 above as if fully set forth herein.

34.    By virtue of payments made by F&D to satisfy claims on the payment and performance bonds, the Indemnitors received valuable benefits equal to at least the amount of the payments made by F&D.

35.    As a result of such payments, Indemnitors impliedly agreed to indemnify F&D for all such payments.

36.    F&D has made demand upon the Indemnitors to fulfill their indemnity obligations to F&D, but the Indemnitors have failed and refused to do so.  As a result of the Indemnitors breach of their common law indemnity obligations, F&D has suffered a direct and proximate loss and is entitled to recover from the Indemnitors its losses and expenses (including, but not limited to, attorneys' fees and consulting fees) incurred as a result of issuing bonds and pursuing its right of indemnification.

### COUNT 4:  CONDITIONS PRECEDENT

37.    All conditions precedent to F&D's entitlement to assert the above claims and causes of action have occurred or have been satisfied, waived, or excused.

### COUNT 5:  APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND OTHER EQUITABLE RELIEF

38.    F&D incorporates and realleges the factual allegations in Paragraphs 1 to 37 above as if fully set forth herein.

39.    Pursuant to Fed. R. Civ. P. 65, to preserve the status quo, F&D requests that the Court grant a temporary restraining order enjoining the Indemnitors, jointly and severally, from dissipating any assets that are or may become available to them to satisfy their obligations to F&D and as to which F&D has an interest or equitable ownership; barring Indemnitors from continuing to hide, secret, and fail to disclose documents and other information to F&D; and, after hearing, issue a preliminary injunction enjoining Indemnitors from same pending trial. F&D also requests that the Court order the specific enforcement of certain provisions of the Agreement of Indemnity and other equitable relief as set forth below.

## F&D IS ENTITLED TO A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND OTHER EQUITABLE RELIEF

40.    To obtain a temporary restraining order or preliminary injunction, or similar equitable relief, a plaintiff must show: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury for which it has no remedy at law if the injunction is not granted; (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant; and, (4) that granting the preliminary injunction will not disserve the public interest. *Autoskill, Inc. v. National Educ. Support Sys., Inc.*, 994 F.2d 1476, 1487 (10th Cir. 1993).

### A.    There is a Substantial Likelihood That F&D Will Prevail on The Merits

41.    F&D need only show a likelihood of prevailing on the merits of its claim, not a certainty. *See, Abdul Wali v. Coughlin*, 754 F.2d 1015, 1024-1025 (2nd Cir. 1985) and *Joseph J.*

14

*Legat Architects P.C. v. United States Dev. Corp.*, 625 F. Supp. 293, 301-302 (E.D. Ill. 1985). Yet, F&D is certain to prevail on its claims.

42.     It is beyond dispute that Wittwer failed to pay many of its subcontractors and suppliers on projects bonded by F&D. F&D has been compelled to pay over $3,500,000.00 to satisfy Wittwer's debts. In fact, Wittwer acknowledged that it was unable to pay its debts. (*See*, Exhibit "2"). Wittwer's default on its contracts and bonds constitutes a breach of the Agreement of Indemnity executed by the Indemnitors. It is undisputed that the Indemnitors have failed to satisfy their obligations under the Agreement of Indemnity and other law as they have failed to provide F&D with sufficient collateral to protect F&D from loss, despite demand by F&D that they do so. (*See*, Exhibit "3").

43.     The right of a surety to strictly and summarily enforce indemnity agreements such as the Agreement of Indemnity and the rights arising thereunder are well settled. Courts around the country routinely enforce such indemnity agreements as a matter of law. *Liberty Mutual Ins. Co. v. Adventura Engineering & Construction Corp.*, 534 F. Supp.2d 1290, 1303-04 (S.D. Fla. 2008). Thus, there is substantial likelihood that F&D will prevail on the merits of its claims against the Indemnitors.

44.     Furthermore, it is undisputed that Wittwer received all but $71,603.84 in contract funds on ODOT project, Beckham County STPY-105A(080). It is also undisputed that F&D was compelled to pay approximately $1,200,000.00 in claims to subcontractors and suppliers to claimants supplying labor and materials to the project. The contract funds received by Wittwer were trust funds under the Agreement of Indemnity and common law as to which F&D was and is the equitable owner as trust beneficiary. As such, it is highly likely that the Indemnitors will be found to have

15

breached their fiduciary duties to F&D established by the Agreement of Indemnity and common law. It is also undisputed that the Indemnitors have failed to produce books and records as required by the Agreement of Indemnity and as requested by F&D. (*See*, Exhibit "5"). Thus, there is a substantial likelihood that F&D will prevail against the Indemnitors on the merits of its claims for a breach of fiduciary duty as well as its claim that Indemnitors failed to produce books and records.

**B.     There is a Substantial Threat That F&D Will Suffer Imminent and Irreparable Injury as to which It has No Adequate Remedy at Law**

45.     There is a substantial threat that the Indemnitors will fail to live up to their obligations to F&D under the Agreement of Indemnity and other law to F&D's imminent and irreparable injury. Such injury is imminent because F&D has already incurred substantial losses as a result of the Indemnitors' actions, in the form of paid claims under the payment and performance bonds, attorneys' fees and other expenses. In addition, thousands of dollars in claims on the payment bond are currently outstanding against F&D as a result of Indemnitors' actions, and F&D will likely incur more losses, including fees and expenses, associated with such claims. Moreover, the Indemnitors have already failed to indemnify F&D despite demand, and have already failed to comply with other obligations to F&D under the Agreement of Indemnity, including, but not limited to, the duty to provide F&D with collateral, make available their books and records, all to the present injury of F&D.

46.     There is a substantial threat that Indemnitors will wrongfully transfer, hide, secret, or otherwise dissipate funds as to which F&D has an interest or equitable ownership under the Agreement of Indemnity and other law because the Indemnitors have engaged in similar actions before with respect to the contract proceeds. Such wrongful transfer or other dissipation by

Indemnitors would be an imminent injury to F&D. Moreover, the wrongful transfer or other dissipation of such funds beyond the reach of F&D could occur in a moment and without any notice to F&D and before it could obtain any legal relief.

47.     The foregoing injuries to F&D would also be irreparable, and courts routinely reach that same conclusion for purposes of injunctive relief. *Developers Surety and Indemnity Company v. Electric Service & Repair, Inc.*, 2009 WL 3831437 (S.D. Fla.). The injury to F&D in this case is irreparable because much of F&D's losses, and the Indemnitors' failure to indemnify it for such losses, has already occurred. Moreover, if funds that could be used to indemnify F&D, or as to which F&D has an interest or equitable ownership, are wrongfully transferred or otherwise dissipated by Indemnitors, it would destroy any chance that F&D could ever recover such funds and leave Indemnitors judgment-proof and unable to indemnify F&D, rendering F&D's losses permanent.

48.     For the same reasons, F&D has no adequate remedy at law. A plaintiff may demonstrate lack of an adequate remedy at law by showing that an award of damages would not be collectible because of the Indemnitors' lack of financial resources. *Lakeview Tech., Inc. v. Robinson*, 446 F.3d 655, 657 (7th Cir. 2006) (judgment awarding damages will not be adequate legal remedy if defendant is effectively judgment-proof); *Aviara Parkway Farms, Inc. v. Agropecuaria La Finca*, 2009 WL 249790 (S.D. Cal.); *Fid. & Deposit Co. v. D.M. Ward Constr. Co.*, 2008 WL 4534082 (D. Kan.). Indeed, under the law of suretyship generally, even if a surety's loss is monetary and only temporary, the very fact of it is having to assume the primary obligor's obligation is a harm for which there is no adequate remedy at law. *Travelers Cas. & Sur. Co. v. Ockerlund*, 2004 WL 1794915 (N.D. Ill.) [hereinafter *Ockerlund*] (*citing* RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 21 cmts. i, j, k (1996)). Based on the Indemnitors' failure to provide F&D with

17

sufficient collateral, it appears unlikely that Indemnitors will have sufficient assets to fully indemnify F&D or pay any legal judgment F&D may obtain against them. Thus, F&D has no adequate remedy at law.

### C. The Threatened Harm to F&D Outweighs the Threatened Harm to the Indemnitors

49.     If the temporary restraining order, preliminary injunction, and other equitable relief hereby sought by F&D are not granted, the threatened harm to F&D is that as a surety it would suffer a permanent loss by the actions of the Indemnitors, and further that the Indemnitors will wrongfully transfer or otherwise dissipate funds that could be used to indemnify F&D and as to which it has an interest or equitable ownership.

50.     The threatened harm to F&D outweighs any threatened harm to the Indemnitors because any funds of the Indemnitors made subject to the injunctive relieve hereby sought by F&D could ultimately be returned to the Indemnitors if not used, whereas F&D would otherwise have to use its own funds to pay claims that were the Indemnitors' primary obligations. This is precisely what the Agreement of Indemnity was designed to protect F&D against. *See, USF&G v. Feibus*, 15 F. Supp.2d 579, 588 (M.D. Pa. 1998). Further, as stated below, F&D is willing to post a bond to protect Indemnitors from potential harm if the injunctive relief sought is granted.

51.     On the other hand, the Indemnitors would be unjustly enriched and receive a windfall if the injunctive relieve hereby sought is not granted in that they would retain the benefit of previously misappropriated funds, permanently escape their obligations to F&D, and have the opportunity to wrongfully transfer or otherwise misappropriate or dissipate such funds in which F&D has a secured interest or equitable ownership. Indeed, because the Indemnitors do not have a right

18

to any funds in their possession to which F&D has a superior legal right or equitable ownership, the Indemnitors would suffer no harm at all if an injunction were granted barring them from dissipating such funds or ordering them to pay such funds to F&D, as well as compelling other actions by them that they are already obligated to perform under the Agreement of Indemnity and other law.

### D. Granting the Preliminary Injunction Will Not Disserve the Public Interest

52. Finally, the Court's issuance of the injunctive relief hereby sought would not disserve the public interest because the Indemnitors misappropriated as much as $1,200,000.00 rightfully due to Wittwer's subcontractors and suppliers, and the issuance of the injunction hereby sought would deter such conduct by others and facilitate the return of such funds to their rightful owner, bolstering the public interest in contractors dealing honestly and promptly paying those to whom they legitimately owe money.

53. On the contrary, the public interest would be disserved if the injunctive relief F&D seeks were not granted because the Indemnitors would be financially rewarded for their misappropriation of the contract funds and breach of fiduciary duty to F&D, as well as the potential future misappropriation of funds as to which F&D has an interest or equitable ownership. Moreover, as its business, F&D issues payment, performance, and maintenance bonds on government construction projects, facilitating their efficient and cost-effective performance to the benefit of the public. Thus, the public interest would be harmed if the injunctive relief hereby sought by F&D were not granted because that would result in increased losses to F&D that will result in increased costs to contractors for the bonds F&D issues. These increased bond costs will be passed on by contractors to the government resulting in higher construction costs for the taxpaying public.

19

*Developers Surety and Indemnity Company v. Electric Service & Repair, Inc.*, 2009 WL 3831437

(S.D. Fla.)

### E.   Courts Routinely Grant Temporary Restraining Orders and Preliminary Injunctions in Similar Circumstances

54.   When faced with circumstances like those present here, courts around the country routinely grant sureties the relief now requested by F&D.  Indeed, in *United States Fire & Casualty Co. v. Coggeshall Construction Co., Inc.* 1991 WL 169147 (C.D. Ill.), the court went so far as to say that such relief should be granted as a matter of right:

> [A] court of equity will, at the request of a surety, seize funds due its principal and apply them to the principal's debts if the Surety can show that: the debts are currently due, the principal is unable or refuses to pay them, and if they are not paid the Surety will become liable.

Id at *1.

55.   In *Coggeshall*, the court granted a temporary restraining order directing the defendant principal on a payment bond to pay $500,000.00 to the payment bond surety as collateral, and granting the surety a lien on assets and real property of the indemnitors in the amount of $500,000.00.  Id.  The court found that forcing the surety to resort to a money judgment was not an adequate remedy and would irreparably harm the surety.  Id.

56.   The Fifth Circuit has also held generally that when a principal is insolvent or has acted wrongfully, its surety is entitled to the type of equitable relief now sought by F&D against the Indemnitors, including the seizure and freezing of assets.  *Glades County v. Detroit Fid. & Sur. Co.*, 57 F.2d 449, 451-452 (5th Cir. Fla. 1932).  In *Glades* the court stated:

> To have subrogation a surety must have discharged in full the obligation for which he is bound, and he then seeks to recover for

20

himself the subject of the suit. In case of exoneration he proceeds before payment quia timet, and seeks to have payment made to the creditor. If the principal is solvent, the decree need not go further than to require the principal to pay, but, *when he is fraudulent, insolvent, or has absconded, the equity of exoneration needs and may have further protection. Injunctions, receivers, and equitable garnishments have been granted, property recovered from third parties, and funds traced and applied.* (Emphasis supplied).

57.    In *Travelers Casualty & Surety Co. v. Ockerlund*, 2004 WL 1794915 (N.D. Ill.), the court recognized that ordering the principal on a payment bond to post collateral with the surety was proper because such equitable relief is recognized under the law of suretyship, and further that the indemnity agreement rendered the surety "not simply an unsecured creditor," but created a specifically bargained for right to specific performance of the agreement's collateral security provision. The court noted that other courts had issued the same relief. Id at *3 (citing *Travelers Cas. & Sur. Co. v. P.B. Verdico, Inc. et al.*, 2004 WL 3030169 (N.D. Ill.) (order granting preliminary injunction)). Ultimately, the court in *Ockerlund* ordered the indemnitors to pay $500,000.00 to the surety within ten days.

58.    Finally, in *Developers Surety & Indemnity Co. v. Electric Service & Repair, Inc.*, 2009 WL 3831437 (S.D. Fla.), the court explicitly granted an injunction broadly barring the indemnitor defendants from selling, transferring, encumbering, disposing of, or transferring any real property, personal property, or cash based on a similar indemnity agreement and similar facts. Other courts recognize the propriety of preliminary injunctions barring the principal's and indemnitors' dissipation of assets where the principal or indemnitors may be insolvent or are secreting such assets. See, *Travelers Cas. & Sur. Co. v. Grace & Naeem Uddin, Inc.*, 2009 WL 6066973 (S.D. Fla.) ("[A] preliminary injunction is warranted to enforce a surety's rights if the principal is insolvent or

21

secreting assets.") (*quoting, Liberty Mut. Ins. Co.*, 534 F. Supp.2d at 1322, and *citing, Glades County*, 57 F.2d at 452).

59.    Thus, it is clear, that on these facts, courts routinely grant the relief sought by F&D, further demonstrating that F&D has met the requirements of a temporary restraining order and preliminary injunction, as well as demonstrating F&D's entitlement to the other equitable relief it hereby seeks.

### F.    Bond

60.    F&D is willing to post a bond in amount approved by the Court.

### Request for Temporary Restraining Order and Preliminary Injunction Barring Dissipation of Indemnitors' Assets

61.    F&D incorporates and realleges the factual allegations in Paragraphs 1 to 60 above as if fully set forth herein.

62.    Having met the requirements for a temporary restraining order, preliminary injunction, and other equitable relief, as set forth above, F&D asks that the Court issue a temporary restraining order barring the Indemnitors from dissipating any assets that could be used to satisfy their obligations to F&D and/or as to which F&D may have an interest or equitable ownership as a trust beneficiary, whether currently held by the Indemnitors or hereafter to be obtained by them, including, but not limited to, real property and equipment owned by Indemnitors or any proceeds obtained or which may be obtained from the sale or rental of Indemnitors' real property or equipment; and after hearing, that the Court issue a preliminary injunction on the same terms pending trial of this lawsuit.

22

63.     F&D requests that the Court set its request for preliminary injunction for hearing at the earliest possible time.

64.     Pursuant to Rule 65(b)(1)(B), counsel for F&D certifies that he has notified counsel for Wittwer Construction Co., Inc. of its intent to apply for a temporary restraining order and has provided counsel with a copy of this pleading.

### Order for Specific Enforcement of Books and Records Provision of Agreement of Indemnity

65.     F&D incorporates and realleges the factual allegations in Paragraphs 1 to 64 above as if fully set forth herein.

66.     Pursuant to Paragraph Ninth of the Agreement of Indemnity, the Indemnitors agreed as follows:

### BOOKS AND RECORDS

NINTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Contractor, and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts.

67.     Without access to such information, F&D cannot fully adjust payment bond claims and cannot determine the amount of monies in bank accounts held by the Indemnitors, the assets owned by the Indemnitors that should have been pledged as collateral to secure the debts owed to F&D, or to otherwise determine F&D's rights under the Agreement of Indemnity and the Bonds. Despite demand by F&D, the Indemnitors have failed or refused to comply with the foregoing

23

provision by hiding, secreting, or otherwise failing to disclose their books and records and other information covered by the foregoing provision. Therefore, having met the requirements for a temporary restraining order, preliminary injunction, and other equitable relief, as set forth above, F&D requests that the Court issue an injunctive order for specific performance of the foregoing provision of the Agreement of Indemnity and commanding the Indemnitors to give F&D physical access to all books and records available under the Agreement of Indemnity at the earliest practicable time. *Developers Surety and Indemnity Company v. Electric Service & Repair, Inc.*, 2009 WL 3831437 (S.D. Fla.) (ordering specific performance of books and records provision of indemnity agreement).

### Order for Accounting

68.    F&D incorporates and realleges the factual allegations in Paragraphs 1 to 67 above as if fully set forth herein.

69.    As set forth above, Wittwer was paid all the contract proceeds on the ODOT Beckham County job and ODOT Oklahoma County job, yet, over $1,200,000.00 in claims have been paid to Wittwer's subcontractors and suppliers under the payment bond. Thus, it is likely that one or more of the Indemnitors defalcated or otherwise misappropriated the contract proceeds. F&D has contractual, trust, and other rights in the contract proceeds and was thus damaged by Indemnitors' defalcation. Therefore, having met the requirements for a temporary restraining order, preliminary injunction, and other equitable relief, as set forth above, F&D requests that the Court issue an injunctive order commanding that the Indemnitors provide F&D with an accounting of the receipt and disbursement of the contract proceeds from the bonded jobs.

**Order for Specific Enforcement of Collateralization Provision of Agreement of Indemnity and/or Order for Indemnitors to Provide Collateral to F&D Under the Doctrine of Quia Timet**

70.     F&D incorporates and realleges the factual allegations in Paragraphs 1 to 69 above as if fully set forth herein.

71.     The Indemnitors have a contractual obligation, set forth in the second paragraph of the Agreement of Indemnity, to place F&D in funds to protect F&D from loss as noted above. Courts routinely order the specific performance of such provisions in these circumstances.  In addition, F&D has a common law right under the doctrine of *quia timet* to require the Indemnitors to post collateral to avoid loss to F&D and the depletion of the Indemnitors' assets, and to ensure faithful performance of the Indemnitors' obligations.

72.     F&D has made demand on the Indemnitors to post collateral in the amount of $3,800,000.00 to guarantee the faithful performance of their obligations.  Despite such demand, the Indemnitors have failed and refused to post collateral with F&D.  Therefore, having met the requirements for a temporary restraining order, preliminary injunction, and other equitable relief, as set forth above, F&D requests that the Court issue an injunctive order commanding the specific performance of the collateralization requirement set forth in the second paragraph of the Agreement of Indemnity, and enforcing the Indemnitors' duties as law and in equity, including under the doctrine of *quia timet*, by requiring the Indemnitors to post sufficient collateral in the amount of $3,800,000.00 pending the outcome of this action to protect F&D from loss and avoid depletion of the Indemnitors' assets, and to ensure faithful performance of the Indemnitors' obligations at law and under the Agreement of Indemnity.

## Exoneration

73.    F&D incorporates and realleges the factual allegations in Paragraphs 1 to 72 above as if fully set forth herein.

74.    Pursuant to the terms of the Agreement of Indemnity and the doctrine of equitable exoneration, F&D is entitled to be exonerated by the Indemnitors from all loss, liability, damage and expense threatened or incurred as a result of issuance of the bonds.  Therefore, having met the requirements for a temporary restraining order, preliminary injunction, and other equitable relief, as set forth above, F&D request that the Court issue an injunctive order commanding that the Indemnitors exonerate F&D from all loss, liability, damage and expense threatened or incurred as result of issuance of the bonds.

## Specific Terms of Equitable Relief Sought

75.    For the foregoing reasons, F&D requests that the Court grant a temporary restraining order, and, after hearing, a preliminary injunction enjoining and barring Indemnitors from the following actions:

   (1)    spending, transferring, withdrawing, dissipating, selling, encumbering, utilizing, manipulating, or otherwise failing to preserve any property, including, but not limited to, monies, investments, or other funds held in cash or in any bank, financial, or other account;

          (a)    in the name of Wittwer Construction Co., Inc.; Windermere Investments, LLC; DMR Aviation, LLC; Griffin Leasing, LLC; D.R. Wittwer, L.P.; Daniel R. Wittwer, Tracy Lynn Wittwer and The Dan and Tracy Wittwer Family Trust;

          (d)    into which funds due Wittwer Construction Co., Inc.; Windermere Investments, LLC; DMR Aviation, LLC; Griffin Leasing, LLC; D.R. Wittwer, L.P.; Daniel R.

Wittwer, Tracy Lynn Wittwer and The Dan and Tracy Wittwer Family Trust from the sale or rental of any real property or equipment were deposited at any time in the past, or will be deposited, or are currently are held;

(2)     hiding, deleting, destroying, altering or overwriting any evidence in paper or electronic form that may in any way relate to the business of Wittwer Construction Co., Inc.; Windermere Investments, LLC; DMR Aviation, LLC; Griffin Leasing, LLC; D.R. Wittwer, L.P.; Daniel R. Wittwer, Tracy Lynn Wittwer and The Dan and Tracy Wittwer Family Trust, including but not limited to any data on any laptop computer, desktop computer, external storage media, or handheld device in Indemnitors' possession, custody, or control, wherever located;

F&D further requests the court order that:

(3)     Indemnitors, Wittwer Construction Co., Inc.; Windermere Investments, LLC; DMR Aviation, LLC; Griffin Leasing, LLC; D.R. Wittwer, L.P.; Daniel R. Wittwer, Tracy Lynn Wittwer and The Dan and Tracy Wittwer Family Trust shall within five (5) days of the issuance of an order granting this request provide F&D with reasonable access to the books, records, and accounts of Wittwer Construction Co., Inc.; Windermere Investments, LLC; DMR Aviation, LLC; Griffin Leasing, LLC; D.R. Wittwer, L.P.; Daniel R. Wittwer, Tracy Lynn Wittwer and The Dan and Tracy Wittwer Family Trust; and that any bank depository, materialman, supply house, or other person, firm, or corporation when requested by F&D is hereby authorized to furnish F&D any information requested including, but not limited to, the status of the work under contracts being performed by Wittwer Construction Co. Inc., the condition of the performance of such contracts and payments of accounts;

(4)     The Indemnitors provide F&D with an accounting of the Contract proceeds and their disbursement within ten (10) days of the issuance of an order granting this request; and

(5)     Indemnitors, Wittwer Construction Co., Inc.; Windermere Investments, LLC; DMR Aviation, LLC; Griffin Leasing,

27

LLC; D.R. Wittwer, L.P.; Daniel R. Wittwer, Tracy Lynn Wittwer and The Dan and Tracy Wittwer Family Trust, shall within ten (10) days of the issuance of an order granting this request pay to F&D then sum of $3,800,000.00, in cash or its equivalent as collateral due to F&D under the Agreement of Indemnity and the doctrine of collateralization/*quia timet*.

WHEREFORE, plaintiff, F&D, requests that Indemnitors be cited to appear and answer and that upon final hearing or trial, the Court enter judgment against Indemnitors, jointly and severally, and in favor of F&D for all losses and expenses, including interest, costs and attorneys' fees and consulting fees, incurred by F&D through the time of trial; grant F&D a temporary restraining order, preliminary injunction, and other equitable relief against the Indemnitors on the terms requested herein and as set forth in the accompanying order; and award F&D such other and further relief at law or in equity to which it is justly entitled.

Evan B. Gatewood, OBA #13412
HAYES MAGRINI & GATEWOOD
1220 N. Walker Ave. (73103)
Post Office Box 60140
Oklahoma City, Oklahoma 73146-0140
Telephone: 405/235-9922
Facsimile: 405/235-6611
Attorneys for plaintiff, Fidelity and Deposit Company of Maryland

N:\FILES\EBG\WP51\CLIENTS\Zurich.Wittwer\Wittwer.Fed.Lawsuit\Complaint.wpd

## CERTIFICATION OF NOTICE

Evan B. Gatewood, counsel for plaintiff, Fidelity and Deposit Company of Maryland, does hereby certify that he has contacted Lynn Osborn, who, in the past on other unrelated matters, has acted as counsel for defendant, Wittwer Construction Co., Inc. and has notified Mr. Osborn that Fidelity and Deposit Company of Maryland was seeking a temporary restraining order and preliminary injunction against Wittwer Construction Co., Inc.; Windermere Investments, LLC; DMR Aviation, LLC; Griffin Leasing, LLC; D.R. Wittwer, L.P.; Daniel R. Wittwer, Tracy Lynn Wittwer and The Dan and Tracy Wittwer Family Trust, and has provided Mr. Osborn with a copy of Fidelity and Deposit Company of Maryland's verified complaint and application for temporary restraining order, preliminary injunction, and other equitable relief.

Evan B. Gatewood, OBA #13412
HAYES MAGRINI & GATEWOOD
1220 N. Walker Ave. (73103)
Post Office Box 60140
Oklahoma City, Oklahoma 73146-0140
Telephone: 405/235-9922
Facsimile: 405/235-6611
Attorneys for plaintiff, Zurich American Insurance Company

N:\FILES\EBG\WP51\CLIENTS\Zurich.Wittwer\Wittwer.Fed.Lawsuit\Cert.Notice.wpd

## VERIFICATION

STATE OF _Indiana_ )

COUNTY OF _Lake_ ) SS

Darrell Leonard, representative for plaintiff, Fidelity and Deposit Company of Maryland, a subsidiary of Zurich American Insurance Company, of lawful age, being first duly sworn upon his oath, states: That he is the representative for plaintiff in the above-entitled cause of action; that he has read the above and foregoing instrument entitled, "Fidelity and Deposit Company of Maryland's Verified Complaint and Application for Temporary Restraining Order, Preliminary Injunction and Other Equitable Relief," and that the facts and information contained therein are true and correct.

_____
Darrell Leonard

Subscribed and sworn to before this __20__ day of March, 2012.

_____
NOTARY PUBLIC

My commission expires:

March 29, 2019

> CHRISTINE M MILLER
> Notary Public- Seal
> State of Indiana
> My Commission Expires Mar 29, 2019

N:\FILES\EBG\WP51\CLIENTS\Zurich.Wittwer\Wittwer.Fed.Lawsuit\Verification.wpd